1  TIFFANY CHEUNG (CA SBN 211497)
   TCheung@mofo.com
2  BEN PATTERSON (CA SBN 268696)
   BPatterson@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Counsel for Defendants
   Purdue Pharma L.P., Purdue Pharma Inc.,
7  Purdue Products L.P., Transcept Pharma, Inc.

8  STEPHEN H. TURNER (CA SBN 89627)
   turner@lbbslaw.com
9  PATRIK JOHANSSON (CA SBN 231769)
   johansson@lbbslaw.com
10 CHRISTOPER M. HABASHY (CA SBN 280725)
   chabashy@lbbslaw.com
11 LEWIS BRISBOIS BISGAARD & SMITH LLP
   221 North Figueroa Street
12 Los Angeles, CA 90012
   Telephone: 213.250.1800
13 Facsimile:213.250.7900

14 Counsel for Defendant
   Logistic Innovations, LLC
15

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18                    OAKLAND DIVISION

19

20 PHYSICIANS HEALTHSOURCE, INC., an          Case No.      CV 13-5490 YGR
   Ohio Corporation, individually and as the
21 representative of a class of similarly-situated   **NOTICE OF MOTION AND MOTION
   persons,                                     TO TRANSFER; MEMORANDUM OF
22                                               POINTS AND AUTHORITIES**
                    Plaintiffs,
23                                             Hearing Date:  April 1, 2014
           v.                                  Time:  2:00 p.m.
24                                             Courtroom:  5, 2nd Floor
   TRANSCEPT PHARMA, INC., PURDUE             Judge:  Hon. Yvonne Gonzalez Rogers
25 PHARMA L.P., PURDUE PHARMA INC.,
   PURDUE PRODUCTS L.P., LOGISTIC            Complaint filed November 26, 2013
26 INNOVATIONS, LLC and JOHN DOES 1-10,

27                  Defendants.

28

MOTION TO TRANSFER
Case No. CV 13-5490 YGR
sf-3375379

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

YOU ARE HEREBY NOTIFIED THAT on April 1, 2014, at 2:00 p.m., or as soon

4

thereafter as counsel may be heard, before the Honorable Yvonne Gonzalez Rogers in the United

5

States District Court for the Northern District of California, located at 1301 Clay Street,

6

Courtroom 5, 2nd Floor, Oakland, California 94612, Defendants will, and hereby do, move the

7

Court to transfer this matter to the District of Connecticut.

8

This Motion to Transfer is based on this Notice of Motion, the Memorandum of Points

9

and Authorities filed herewith, the accompanying Declarations of Brianne Weingarten,

10

Merrill Corry, and Ben Patterson, attached exhibits filed herewith, all other pleadings and matters

11

of record, and such further oral and documentary evidence as may be presented at or before the

12

hearing on this motion.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF THE ISSUES TO BE DECIDED ........................................................ 2

II. FACTUAL BACKGROUND .......................................................................................... 2

    A. The Substantially Similar Action Has Been Actively Litigated in Connecticut ............................................................................................... 2

    B. Over a Year After the First Case, Plaintiff Filed This Related Action in California ...................................................................................................... 3

    C. Both Actions Involve Identical or Substantially Similar Parties, Subject Matter, and Claims .............................................................................. 4

III. LEGAL STANDARD .................................................................................................... 5

IV. ARGUMENT .................................................................................................................. 5

    A. This Action Might Have Been Brought in the District of Connecticut, and Defendants Consent to that Venue .......................................................... 6

    B. The Convenience of the Parties Weighs in Favor of Transferring This Case to Connecticut .................................................................................. 6

    C. The Interests of Justice Also Compel the Transfer of These Proceedings............ 10

V. CONCLUSION ............................................................................................................... 12

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3 **C**ASES

4 *Bibo v. Fed. Express, Inc.*,
   No. C07-2505 TEH, 2007 U.S. Dist. LEXIS 78388 (N.D. Cal. Oct. 10, 2007) .................. 5, 6
5

6 *Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986).................................................................................................. 6, 7

7

8 *Elecs. for Imaging, Inc. v. Tesseron, Ltd.*,
   No. C 07-05534 CRB, 2008 U.S. Dist. LEXIS 10844 (N.D. Cal. Jan. 29, 2008) ................. 10

9 *In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. C 10-3619 SI, 2011 U.S. Dist. LEXIS 53064 (N.D. Cal. Apr. 13, 2011) ....................... 10
10

11 *Italian Colors Rest. v. Am. Express Co.*,
   No. C-03-3719 SI, 2003 U.S. Dist. LEXIS 20338 (N.D. Cal. Nov. 10, 2003) ........................ 9

12
   *Johansson v. Cent. Garden & Pet Co.*,
13    No. C 10-03771 MEJ, 2010 U.S. Dist. LEXIS 130499 (N.D. Cal. Dec. 2, 2010)................. 10

14 *Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000)................................................................................................... 5, 6
15

16 *Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987)....................................................................................................... 7

17
   *Nack v. Walburg*,
18    715 F.3d 680 (8th Cir. 2013)..................................................................................................... 11

19 *Patent Mgmt. Found., LLC v. Analog Devices, Inc.*,
   No. C-10-3630 SBA, 2011 U.S. Dist. LEXIS 7389 (N.D. Cal. Jan. 20, 2011) ........................ 9
20

21 *Quad/Tech Inc. v. Q.I. Press Controls*,
   No. C 10-2243 CRB, 2010 U.S. Dist. LEXIS 121063 (N.D. Cal. Nov. 15, 2010)................ 10

22
   *Rainin Instrument, LLC v. Gilson, Inc.*,
23    No. C 05-04030 JSW, 2006 U.S. Dist. LEXIS 15747 (N.D. Cal. Mar. 15, 2006).................. 11

24 *Reese v. CNH America LLC*,
   574 F.3d 315 (6th Cir. 2009)..................................................................................................... 11
25

26 *Roe v. Intellicorp Records, Inc.*,
   No. 12-CV-02567 YGR, 2012 U.S. Dist. LEXIS 121449 (N.D. Cal. Aug. 27, 2012) .... passim

27 *Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988)....................................................................................................... 5
28

**STATUTES**

28 U.S.C. § 1331 ................................................................................................................ 6

28 U.S.C. § 1391(c)(2) ...................................................................................................... 6

28 U.S.C. § 1404(a) ............................................................................................... 2, 5, 6, 10

47 U.S.C. §227 ................................................................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 42 ............................................................................................................ 11

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2        Plaintiff Physicians Healthsource, Inc. ("PHI") is an Ohio medical practice group who not

3    only is a serial TCPA claimant (represented by the same serial TCPA counsel),[1] but also filed a

4    virtually identical class complaint 18 months prior against Purdue, the principal defendant here.

5    In the previously-filed Connecticut case, the Court denied (without prejudice as premature)

6    PHI's early motion for class certification and has expressed skepticism regarding the merits of

7    Plaintiff's underlying claims on multiple occasions.  PHI's filing of this new action should be

8    seen as the forum shopping effort that it is, and this Court should transfer this case to Connecticut

9    where it can be consolidated with the previously-filed action.

10        Transfer to the District of Connecticut will conserve judicial resources, promote the

11    convenience of the parties and witnesses, and serve the interests of justice.  This case involves

12    substantially similar—if not identical—parties, claims, and subject matter.  Both cases involve the

13    same Plaintiff, Plaintiff's counsel, and Purdue Defendants, as well as the same single cause of

14    action under the Telephone Consumer Protection Act ("TCPA") related to the transmission of

15    allegedly improper faxes to overlapping classes.  Plaintiff's own complaint in this matter

16    demonstrates that the two actions—although filed on opposite sides of the country—involve

17    related subject matter and questions of law.  (*See* Declaration of Ben Patterson ("Patterson

18    Decl.") ¶ 4, Ex. 3 ("Cal. Comp.").)

19        The first of the related cases has been litigated for over a year in the District of

20    Connecticut, and that court has already considered and decided several contested motions.

21    Through the course of that motion practice, the Connecticut court has expressed skepticism

22    concerning Plaintiff's underlying claims, including during a May 21, 2013 hearing on

23    Defendants' motion to dismiss.  (*See* Patterson Decl. ¶ 7, Ex. 6 at 14-15 (Transcript of

24    Proceedings) (questioning Plaintiff's attempt to expand the scope of the regulation governing

25    "opt-out" notice).)  In this case, by contrast, no substantive activity has occurred since the

26

27        [1] *See* footnote 5 below.

28

Plaintiff's complaint was filed.  No Defendant has responded to the complaint because that response deadline has been stayed pending a decision on this motion to transfer.

As discussed below, the required elements of 28 U.S.C. § 1404(a) have been satisfied, and the relevant factors compel transfer of this case to the District of Connecticut.

I.      STATEMENT OF THE ISSUES TO BE DECIDED

Should the Court transfer this matter to the District of Connecticut where the related action, *Physician Healthsource Inc., v. Purdue Pharma L.P., et al.*, has been pending and actively litigated for over a year?

II.     FACTUAL BACKGROUND

A.      The Substantially Similar Action Has Been Actively Litigated in Connecticut.

On August 17, 2012, Plaintiff filed its first TCPA case against Purdue, *Physicians Healthsource, Inc. v. Purdue Pharma, L.P., et al*, No. 12-cv-1208-SRU, in the District of Connecticut before the Honorable Stefan R. Underhill.  (Patterson Decl. ¶ 2, Ex. 1 ("Connecticut Action").)[2]  The same three Purdue Defendants named in that action are also named in this action: Purdue Pharma L.P., Purdue Pharma Inc., and Purdue Products L.P. (collectively, "Purdue").  On October 22, 2012, Defendants in the Connecticut Action filed both a Rule 12 motion to dismiss and a motion for summary judgment.  Concurrent with granting Plaintiff leave to file an amended complaint, on February 8, 2013, the Connecticut court denied as moot Defendants' motion to dismiss and motion for summary judgment, without prejudice to filing similar motions regarding the amended complaint.  On February 8, 2013, Plaintiff filed an amended complaint that proposes a putative class that overlaps with the class asserted here.[3]  On March 14, 2013, Defendants in the

_____

[2] As noted below, in the Connecticut Action, Plaintiff filed an amended complaint, which still asserts similar claims and an overlapping class.  (Patterson Decl. ¶ 3, Ex. 2 ("Conn. Comp.").)

[3] In this case, Plaintiff purports to represent:  "All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, and (3) which did not display a proper opt-out notice."  (Cal. Comp. ¶ 24.)  In Connecticut, Plaintiff purports to represent:  "All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages of material advertising the

(Footnote continues on next page.)

1    Connecticut Action filed a motion to dismiss Plaintiff's amended complaint.  After it was fully

2    briefed and heard, the Connecticut court denied in part and took under advisement in part

3    Defendants' motion to dismiss.

4          At the hearing on Defendants' motion to dismiss on May 21, 2013, the Connecticut court

5    expressed skepticism regarding Plaintiff's claims on the merits, and in particular, Plaintiff's

6    attempt to extend the scope of the regulation governing the "opt-out" notice that provides

7    instructions on how to "opt-out" of receiving faxes.  (*See* Patterson Decl. ¶ 7, Ex. 6 at 14-15 ("the

8    FCC only has authority to deal with a statute they are given").)

9          Four days after the amended complaint was filed, Plaintiff also filed a motion for class

10   certification.  On September 6, 2013, the court denied Plaintiff's premature class certification

11   motion without prejudice.  On November 26, 2013, Defendants in the Connecticut Action filed a

12   motion to stay the action pending final resolution of Purdue's petition to the FCC, seeking a

13   ruling from the FCC regarding the scope of the regulation regarding "opt-out" notices.  After this

14   motion to stay was fully briefed, the Connecticut court granted Defendants' motion to stay on

15   February 3, 2014.

16          **B.    Over a Year After the First Case, Plaintiff Filed This Related Action in
                    California.**

17

18          Over a year after the first-filed case, on November 26, 2013, Plaintiff filed this action in

19   the Northern District of California against the same Purdue entities, along with Logistic

20   Innovations, LLC ("Logistic") and Transcept Pharma, Inc. ("Transcept").  (*See* Cal. Comp. ¶¶ 4,

21   9-14.)  Plaintiff filed this action in California only *after* the Connecticut court expressed

22   skepticism regarding the merits of Plaintiff's claims on the record and only *after* the Connecticut

23

24   _____

     (Footnote continued from previous page.)

25   commercial availability of any property, goods, or services by or on behalf of Defendants, with
     the following notice 'If you do not wish to be contacted with future fax offers from the Peer

26   Group, please call 888-733-7321 or fax at 800-929-8290.'"  (Conn. Comp. ¶ 21.)  In the
     Connecticut Action, Plaintiff has asserted that the faxes at issue did not display a proper opt-out

27   notice.  (*Id.* ¶¶ 1, 20.)  Those faxes, therefore, are included in the putative class asserted here.

28

1    court denied Plaintiff's motion for class certification as premature, despite the fact that Plaintiff

2    had allegedly received the faxes at issue in October 2012.  (*See* Cal. Comp. Ex. A.)

3         This California case is in its early stages.  Defendants' motion to transfer venue is the first

4    motion to be submitted after the filing of the complaint.  Defendants' deadline to respond to the

5    complaint has been extended until 30 days after the Court's decision on this motion to transfer

6    venue (if the motion is denied).  (Docket No. 19.)

7         **C.    Both Actions Involve Identical or Substantially Similar Parties, Subject**
           **Matter, and Claims.**
8

9         Both lawsuits involve the same Plaintiff, the same putative class counsel, and the three

10   common Purdue Defendants.  The same Plaintiff purports to represent a class in the Connecticut

11   Action that overlaps with the class asserted here.  Both lawsuits also involve the same subject

12   matter and the same law—i.e., faxes allegedly sent in violation of the TCPA.  Both cases assert

13   the same single cause of action under the TCPA.

14        Several portions of the two complaints are identical or significantly similar.  (*Compare*

15   Conn. Comp. ¶¶ 3, 21-27, 33, *with* Cal. Comp. ¶¶ 4, 24, 26-31, 41; Patterson Decl. ¶ 5, Ex. 4

16   (Comparison Chart).)  Plaintiff in both cases seeks certification of a putative class and asserts

17   similar "common legal questions."  These include:  (1) "[w]hether the Defendants' faxes

18   advertised the commercial availability of property, goods, or services;" (2) "[w]hether the

19   Defendants violated the provisions of 47 U.S.C. §227;" and (3) "[w]hether the faxes contain an

20   'opt-out notice' that complies with the requirements of § (b)(l)(C)(iii) of the Act. . . ." or

21   "[w]hether the faxes contained the proper opt-out notice language."  (*Compare* Conn. Comp.

22   ¶ 22, *with* Cal. Comp. ¶ 26.)

23        Plaintiff's complaint here repeatedly cites to the Connecticut Action.  (*See* Cal. Comp.

24   ¶¶ 13, 16, 23, 26.)  Plaintiff alleges, for example, that "the Purdue Defendants were served with a

25   Class Action Complaint Plaintiff filed in Connecticut regarding their violations of the TCPA.

26   Because these advertisements were sent by fax after the Connecticut suit was filed, Defendants

27   actions should be found to be willful, knowing and intentional." (*Id.* ¶ 23.)  Based on these

28   *allegations*, Plaintiff claims that "the Purdue Defendants have willfully, knowingly and

intentionally violated the JFPA and [asks the Court to] treble the statutory damages being sought." (*Id.*)

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), a case may be transferred to another district court where the action "might have been brought" or one to which all parties have consented.  28 U.S.C. § 1404(a).  A district court has discretion to transfer matters pursuant to Section 1404(a) in order to serve the "convenience of the parties and witnesses" or to promote "the interest of justice." *Id.* Courts make this determination of whether to transfer venue by considering, on a case-by-case basis, factors of convenience and fairness.  *See, e.g.*, *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988).  Among the factors a court may consider are:

- the state that is most familiar with the governing law,
- the plaintiff's choice of forum,
- the respective parties' contacts with the forum,
- the contacts relating to the plaintiff's cause of action in the chosen forum,
- the differences in the costs of litigation in the two forums, and
- the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).[4]  "The court has the broad discretion to address these factors based on the particular facts of each case." *Bibo v. Fed. Express, Inc.*, No. C07-2505 TEH, 2007 U.S. Dist. LEXIS 78388, at *5 (N.D. Cal. Oct. 10, 2007).

### IV. ARGUMENT

Transfer is proper because the requirements of Section 1404(a) are satisfied and the discretionary factors weigh heavily in favor of transfer.  "The purpose of § 1404(a) is to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Roe v. Intellicorp Records, Inc.*, No. 12-CV-02567

---

[4] Defendants do not discuss in detail the other two factors identified in *Jones* because those factors are neutral in the analysis of the circumstances of this case.

YGR, 2012 U.S. Dist. LEXIS 121449, at *5 (N.D. Cal. Aug. 27, 2012) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  As explained below, transfer to the District of Connecticut would accomplish those goals.  The District of Connecticut is the Purdue Defendants' home district.  Plaintiff has been litigating a similar case there against Purdue since August 2012, and predicated some of its allegations here on resolution of those earlier-filed claims.  In addition, Judge Underhill in that matter is already familiar with the law and subject matter relevant for this case.

### A.   This Action Might Have Been Brought in the District of Connecticut, and Defendants Consent to that Venue.

Plaintiff has already filed a similar action in the District of Connecticut, alleging TCPA violations against the Purdue Defendants.  The District of Connecticut has subject matter jurisdiction over this TCPA federal action, pursuant to 28 U.S.C. § 1331.  Venue is proper in the District of Connecticut because Purdue is a corporation that "resides" in the District of Connecticut and is subject to personal jurisdiction there.  *See* 28 U.S.C. § 1391(c)(2); (Cal. Comp. ¶¶ 11-12.)  The other two Defendants in this action, Transcept and Logistic, both consent to this action being transferred to the District of Connecticut.  Therefore, the required elements of 28 U.S.C. § 1404(a) have been satisfied.

### B.   The Convenience of the Parties Weighs in Favor of Transferring This Case to Connecticut.

Based on the totality of the relevant factors, transfer to the District of Connecticut is proper, convenient, and efficient.  *See Jones*, 211 F.3d at 498.

**Familiarity with Governing Law.**  Courts must consider "the practical issues that make a case easier or more difficult to try in a given forum, such as familiarity of each forum with applicable law and the relative court congestion."  *Bibo*, 2007 U.S. Dist. LEXIS 78388, at *4 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).  Because this case involves a single federal TCPA cause of action, there is no reason to believe that the District of Connecticut is not at least equally as capable as this Court to decide those TCPA issues.  *See Roe*, 2012 U.S. Dist. LEXIS 121449, at *11 (explaining that where a "case

1   involves federal law, either forum is equally capable of hearing and deciding those questions")
2   (citation and quotation marks omitted).

3       Judge Underhill in the District of Connecticut has already spent a year and a half studying
4   the law and facts of the Connecticut Action.  That case has been actively litigated over those
5   18 months, including motions to dismiss and motion practice on class certification.  (*See*
6   Patterson Decl. ¶ 8, Ex. 7 (Order denying in part, and taking under advisement in part, motion to
7   dismiss); ¶ 9, Ex. 8 (Order denying motion for class certification as premature).)  Thus, Judge
8   Underhill is already very familiar with the facts involved and the specific statutory law governing
9   this instant case.  Indeed, Plaintiff's complaint here includes repeated references to the
10  Connecticut Action, making clear Plaintiff's own view that the cases are interrelated.  (Cal.
11  Comp. ¶¶ 13, 16, 23, 26.)  Judge Underhill's familiarity with the common Defendants and the
12  relevant law weighs heavily in favor of transfer.

13      **Plaintiff's Choice of Forum.**  While a plaintiff's choice of forum is normally entitled to
14  considerable deference, that is not the case here.  Plaintiff PHI is not a resident of California; it is
15  an Ohio corporation with its principal place of business in Ohio.  (Cal. Comp. ¶ 8.)  Plaintiff does
16  not appear to have any significant contacts with this forum.  The conduct at the core of the
17  complaint is Plaintiff's alleged receipt of the two faxes attached to its complaint.  These
18  documents appear to indicate that the faxes were sent by "Logistic Innovations, LLC"—a New
19  York corporation—to a number with an Ohio area code.  Because Plaintiff is located in Ohio, any
20  sales representatives contacting it with respect to Purdue marketing would also be located in or
21  near Ohio, not California.  (Declaration of Brianne Weingarten ("Weingarten Decl.") ¶ 6.)  Given
22  that the Plaintiff does not reside in this district, and the district lacks any significant contacts with
23  the operative facts of the complaint, Plaintiff's forum choice "is entitled to only minimal
24  consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see also Roe*, 2012 U.S. Dist.
25  LEXIS 121449, at *7-8.  In addition, a plaintiff's choice of forum is discounted where, as here, an
26  individual seeks to represent a class.  *See Lou*, 834 F.2d at 739; (Cal. Comp. ¶¶ 24-31.)  Plaintiff's
27  choice of forum therefore can be afforded no more than minimal weight.

28

**Contacts with the Forum.**  Plaintiff lacks contacts with this District, and none of the events pertinent to Plaintiff's allegations occurred in California.  (*See* Cal. Comp. ¶¶ 8, 16-18.) There is, thus, no local interest in having the controversy resolved in this District.  *See Decker Coal Co.*, 805 F.2d at 843 (Further considerations include the "local interest in having localized controversies decided at home" and "the unfairness of burdening citizens in an unrelated forum with jury duty." (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981))).  The District of Connecticut, on the other hand, has a strong interest in resolving this dispute because this case involves a potential class action against a company headquartered in Connecticut.  *See Roe*, 2012 U.S. Dist. LEXIS 121449, at *10-11 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) ("Ohio has a strong interest in resolving a dispute involving an Ohio company")).

**Convenience of the Parties and Witnesses.**  Transferring this action to the District of Connecticut would be more convenient for all parties and witnesses.  The same Plaintiff, Physicians Healthsource, Inc., with the same putative counsel, has already filed a similar case in Connecticut.  Thus, for Plaintiff (a resident of Ohio), it is apparently not burdensome to litigate in the District of Connecticut, and indeed, litigating both cases in the same district should be more convenient and efficient than litigating one case in California and the other across the country in Connecticut.[5]  This is particularly true because Plaintiff lacks significant contacts, if any, with the Northern District of California.

For Purdue, not only would it cost significantly more time and money to litigate both the Connecticut and California cases in separate forums, but Purdue's headquarters are located in

---

[5] It does not appear to be inconvenient at all for Plaintiff to litigate outside of California.  This same Plaintiff has filed at least five other TCPA class actions against other entities not involved in this case or the Connecticut Action in courts located in the Midwest or on the East Coast.  *See, e.g.*, *Physicians Healthsource, Inc. v. Multiplan Services Corp.*, No. 12-cv-11693 (D. Mass. Sept. 12, 2012); *Physicians Healthsource, Inc. v. Cephalon, Inc., et al.*, No. 12-cv-3753 (E.D. Pa. July 3, 2012); *Physicians Healthsource, Inc. v. Allscripts-Misy's Healthcare Solutions, Inc., et al.*, No. 12-cv-3233 (N.D. Ill. May 1, 2012); *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, No. 12-cv-729 (W.D. Mich. July 16, 2012); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-cv-22330 (S.D. Fla. June 22, 2012).

Stamford, Connecticut.  (Cal. Comp. ¶¶ 11-12; Conn. Comp. ¶ 7 ("Venue is proper in the District of Connecticut because . . . Defendants have their principal places of business [t]here").)  The District of Connecticut is therefore a far more convenient forum for Purdue than litigating across the country in California.  Connecticut is also more convenient for Defendant Logistic because its principal place of business is in New York City.  (Cal. Comp. ¶ 14; Declaration of Merrill Corry ("Corry Decl.") ¶ 3.)

Furthermore, because Purdue's headquarters and principal place of business are located in Connecticut, the individuals that Purdue expects to testify regarding the relevant allegations of this case all work in the District of Connecticut.  (Weingarten Decl. ¶ 4.)  This factor strongly weighs in favor of transfer.  *See Roe*, 2012 U.S. Dist. LEXIS 121449, at *8-9 (finding that convenience of the parties favored transfer where defendant was headquartered in transferee district, among other reasons).

The only party to this case that has any significant connection to the Northern District of California is Defendant Transcept.  (Cal. Comp. ¶ 9.)  But Transcept has little to do with the underlying allegations involved in this case.  Although Transcept developed the drug that was the subject matter of the faxes at issue (Cal. Comp. Ex. A), Transcept exercises little to no control or monitoring over the marketing strategy for that drug and does not control the use of marketing faxes.  (Weingarten Decl. ¶ 7.)  Transcept's involvement in the core allegations is tangential, and there will be few, if any, Transcept witnesses who have information relevant to the core allegations.  (*Id.*)

**Ease of Access to Sources of Proof.**  Much of the evidence likely to be relevant in this case—documents reflecting Purdue's marketing operations, as well as its primary computer servers—is located at Purdue's headquarters in Stamford, Connecticut.  (*Id.* ¶ 5.)  Because Logistic is located in New York City, any relevant Logistic witnesses and the relevant documents that Logistic might possess would also likely be located on the East Coast.  (Corry Decl. ¶¶ 4-5; *see Italian Colors Rest. v. Am. Express Co.*, No. C-03-3719 SI, 2003 U.S. Dist. LEXIS 20338, at *14 (N.D. Cal. Nov. 10, 2003) ("Documents pertaining to defendants' business practices are

1   most likely to be found at their principal place of business.").[6]  By contrast, in light of

2   Transcept's limited involvement in the subject matter of this case, it is unlikely that many

3   relevant documents would be located in California.  Accordingly, this factor also weighs in favor

4   of transfer.

5                 **C.      The Interests of Justice Also Compel the Transfer of These Proceedings.**

6           The "interest of justice" component of 28 U.S.C. § 1404(a) is an independent basis upon

7   which a court may transfer an action, separate from consideration of any convenience factors.

8   *See Elecs. for Imaging, Inc. v. Tesseron, Ltd.*, No. C 07-05534 CRB, 2008 U.S. Dist. LEXIS

9   10844, at *3 (N.D. Cal. Jan. 29, 2008) ("Consideration of the interest of justice, which includes

10  judicial economy, may be determinative to a particular transfer motion, even if the convenience

11  of the parties and witnesses might call for a different result." (quoting *Regents of the Univ. of Cal.*

12  *v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997))).  The promotion of judicial economy is

13  a key component of the "interests of justice" analysis under Section 1404(a).  When courts

14  consider whether to transfer "putative class actions . . . even where the causes of action are not

15  similar but are based on similar allegations pled in a later-filed action, concerns over judicial

16  efficiency are paramount."  *Johansson v. Cent. Garden & Pet Co.*, No. C 10-03771 MEJ, 2010

17  U.S. Dist. LEXIS 130499, at *6 (N.D. Cal. Dec. 2, 2010) (granting motion to transfer).

18          As discussed above, this action and the Connecticut Action involve the same Plaintiff, the

19  same Plaintiff's counsel, three of the same Defendants (Purdue), and similar factual and legal

20  issues.  It is in the interests of justice that related cases be heard together.  Transfer here will

21  avoid duplicative litigation, ensure judicial economy, and prevent the waste of time and money.[7]

22          [6] That some of the relevant documents may be electronic does not alter this conclusion.
23  *See Patent Mgmt. Found., LLC v. Analog Devices, Inc.*, No. C-10-3630 SBA, 2011 U.S. Dist.
     LEXIS 7389, at *13-14 (N.D. Cal. Jan. 20, 2011) (finding that "the possibility that documents can
24  be produced electronically does not alter the conclusion that the cost of litigation will likely be
     less if the case were venued in the forum where the evidence is located").

25          [7] Sound policy reasons counsel against allowing overlapping actions to proceed in parallel
     in different forums.  *See Quad/Tech Inc. v. Q.I. Press Controls*, No. C 10-2243 CRB, 2010 U.S.
26  Dist. LEXIS 121063, at *6-12 (N.D. Cal. Nov. 15, 2010) (transferring second-filed action to for a
     of first-filed action where both cases involved "overlapping issues of law and fact" in order to
27  "promote judicial efficiency" and avoid "risk of inconsistent rulings"); *see also In re TFT-LCD*
     *(Flat Panel) Antitrust Litig.*, No. C 10-3619 SI, 2011 U.S. Dist. LEXIS 53064, at *25-31
28                                                                    (Footnote continues on next page.)

Indeed, with both cases in Connecticut, Judge Underhill would be able to manage the actions in order to avoid duplicative discovery, motion practice, and unnecessary costs. *See* Fed. R. Civ. P. 42; *Rainin Instrument, LLC v. Gilson, Inc.*, No. C 05-04030 JSW, 2006 U.S. Dist. LEXIS 15747, at *10-11 (N.D. Cal. Mar. 15, 2006) (granting motion to transfer, finding that transferee court was "intimately familiar with the issues and evidence central to this case"); *see also Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (recognizing judicial economy in having case decided by judge who was handling companion case and whose familiarity would provide "a leg up on the legal and factual issues presented").

In addition, Plaintiff's own allegations show that the factual and legal issues in the Connecticut Action are intertwined with this one. Plaintiff claims here that, in light of its earlier-filed Connecticut Action, Defendants have "willfully, knowingly and intentionally" violated the TCPA. (Cal. Comp. ¶ 23 (alleging that "[b]ecause these advertisements were sent by fax after the Connecticut suit was filed, Defendants actions should be found to be willful, knowing and intentional").) These "willfulness" allegations are predicated on a finding of liability in the Connecticut Action. The same judge evaluating the claims in the Connecticut Action should evaluate the claims asserted here, including the claim for trebled damages based on the alleged conduct underlying the Connecticut Action. Judicial economy, therefore, strongly favors transferring this matter to the same district that is deciding the earlier-filed Connecticut Action, which forms the basis for Plaintiff's "willfulness" claims.

Especially in light of Plaintiff's own view that the two cases are intertwined, Plaintiff's attempted forum-shopping should not be condoned. Plaintiff waited over a year after receiving the faxes at issue to file this California action—only *after* Judge Underhill expressed skepticism on the record regarding Plaintiff's underlying claims and only *after* other courts, including the Eighth Circuit in *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013), began issuing stays or

(Footnote continued from previous page.)

(N.D. Cal. Apr. 13, 2011) (granting stay of second-filed action where both actions alleged conspiracy and involved similar groups of defendants over essentially the same period of time).

1  suggesting stays would be appropriate based on those same criticisms.  Judge Underhill has now

2  entered the stay that Plaintiff vigorously opposed.  In its Order, the Court reiterated its belief that

3  Plaintiff's arguments on the merits are likely incorrect.  (*See* Patterson Decl. ¶ 6, Ex. 5 (Ruling on

4  Motion to Stay) (noting that the court is "inclined to agree with the defendants that the FCC lacks

5  authority to regulate solicited faxes pursuant to section 227(b) of the TCPA").)  Plaintiff would

6  like nothing better than a new decision-maker before whom it can take a second bite at the apple.

7  Plaintiff should not be allowed to re-litigate the issues it has lost or is likely to lose in its attempt

8  to circumvent a Connecticut judge that has already spent over a year and a half with the same

9  parties and legal issues.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **V.      CONCLUSION**

2            For all of these reasons, Defendants respectfully request that this Court transfer this matter

3    to the District of Connecticut.[8]

4

5    Dated:  February 20, 2014              TIFFANY CHEUNG
                                            BEN PATTERSON
6                                           MORRISON & FOERSTER LLP

7

8                                           By:   /s/ Tiffany Cheung
                                                  TIFFANY CHEUNG
9                                                 TCheung@mofo.com

10                                          Counsel for Defendants
                                            Purdue Pharma L.P., Purdue Pharma Inc.,
11                                          Purdue Products L.P., Transcept Pharma, Inc.

12   Dated:  February 20, 2014              STEPHEN H. TURNER
                                            PATRIK JOHANSSON
13                                          CHRISTOPER M. HABASHY
                                            LEWIS BRISBOIS BISGAARD & SMITH LLP

14

15                                          By:   /s/ Stephen H. Turner
                                                  STEPHEN H. TURNER
16                                                turner@lbbslaw.com

17                                          Counsel for Defendant
                                            Logistic Innovations, LLC
18

19

20

21

22

23

24

25

26          _____
            [8] Alternatively, given Plaintiffs' own representations that claims in this case are predicated
27   on the Connecticut Action, this Court could stay this action until the underlying Connecticut
     claims are resolved.
28

**ATTESTATION**

I, Tiffany Cheung, am the ECF User whose ID and password are being used to file this Notice of Motion and Motion to Transfer; Memorandum of Points and Authorities.  In compliance with Local Rule 5-1(i)(3), I hereby attest that Stephen H. Turner has concurred in this filing.


Dated:  February 20, 2014                                         /s/ Tiffany Cheung
                                                                                TIFFANY CHEUNG