1  TIFFANY CHEUNG (CA SBN 211497)
   TCheung@mofo.com
2  BEN PATTERSON (CA SBN 268696)
   BPatterson@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Counsel for Defendants
   Purdue Pharma L.P., Purdue Pharma Inc.,
7  Purdue Products L.P., Transcept Pharma, Inc.

8  STEPHEN H. TURNER (CA SBN 89627)
   turner@lbbslaw.com
9  PATRIK JOHANSSON (CA SBN 231769)
   johansson@lbbslaw.com
10 CHRISTOPER M. HABASHY (CA SBN 280725)
   chabashy@lbbslaw.com
11 LEWIS BRISBOIS BISGAARD & SMITH LLP
   221 North Figueroa Street
12 Los Angeles, CA 90012
   Telephone: 213.250.1800
13 Facsimile:213.250.7900

14 Counsel for Defendant
   Logistic Innovations, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio Corporation, individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>v.<br><br>TRANSCEPT PHARMA, INC., PURDUE PHARMA L.P., PURDUE PHARMA INC., PURDUE PRODUCTS L.P., LOGISTIC INNOVATIONS, LLC and JOHN DOES 1-10,<br><br>Defendants. | Case No.   CV 13-5490 YGR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER**<br><br>Hearing Date:  April 15, 2014<br>Time:          2:00 p.m.<br>Courtroom:     1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Complaint filed November 26, 2013 |

REPLY ISO MOTION TO TRANSFER
Case No. CV 13-5490 YGR
sf-3393107

## I. INTRODUCTION

Defendants' Motion to Transfer and Memorandum in support (Docket No. 26 ("Motion")) demonstrated that this case should be transferred to the District of Connecticut, pursuant to 28 U.S.C. § 1404(a). Plaintiff's Opposition (Docket No. 31 ("Opp.")) fails to address the overwhelming majority of Defendants' Motion, completely ignores the two supporting declarations of Brianne Weingarten (Purdue) and Merrill Corry (Logistic Innovations, LLC), and ignores Plaintiff's own complaint.

Plaintiff overreaches by claiming that Defendants "neglect to even mention . . . the eight factors that are typically weighed by Ninth Circuit courts" and "offer no affidavit or other evidence" to support this Motion. (Opp. at 3-4.) To the contrary, Defendants' Motion thoroughly explains how the relevant transfer factors articulated by the Ninth Circuit compel a transfer of this case (Motion at 5-10), and attached two declarations that establish the relevant facts. (Docket Nos. 26-11 ("Weingarten Decl."), 26-12 ("Corry Decl.").) Plaintiff does not dispute or offer *any evidence* that rebuts the declarations demonstrating that the witnesses and documents relevant to the core allegations are located in Connecticut or New York. Instead, Plaintiff ignores these declarations and offers speculation that relevant information may be found in California. These unsupported arguments must fail.

Moreover, in a last-ditch attempt to dodge the District of Connecticut, Plaintiff also argues that California has greater legal expertise and a greater interest in this case because a California statute—pled nowhere in the Complaint—may offer additional damages. (Opp. at 12.) But this argument is irrelevant because Plaintiff does not even allege any California state law claim.

Although Plaintiff denies that it filed this action in the Northern District of California to avoid Judge Underhill (Opp. at 8-9), Judge Underhill has already expressed skepticism about the validity of Plaintiff's claims, and Plaintiff has not and cannot offer any compelling reasons why a new, different court should preside over a case that is related to one that has been actively litigated before Judge Underhill for over a year. The Court should transfer this case to the District of Connecticut for the convenience of the parties and witnesses and to promote the interests of justice.

## II. ARGUMENT

### A. Transfer to the District of Connecticut Is Proper: This Action Might Have Been Brought in the District of Connecticut, and Defendants Consent to that Venue.

As explained in Defendants' Motion, transfer to the District of Connecticut is proper, pursuant to 28 U.S.C. § 1404(a), because this action might have been brought in that district. (Motion at 6.) All of the Defendants consent to this action being transferred to that district. In its Opposition, Plaintiff does not dispute that the District of Connecticut would have had subject matter jurisdiction over this federal action, nor does Plaintiff argue that personal jurisdiction is lacking in that district. Rather, Plaintiff merely argues that "[v]enue does not appear to be appropriate in the District of Connecticut under any" provision of 28 U.S.C. § 1391(b). (Opp. at 6.) Under 28 U.S.C. § 1391(b)(2), however, venue is proper in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred. . . ." 28 U.S.C. § 1391(b)(2). As made clear in Defendants' Motion and reiterated below, a substantial part of the conduct giving rise to the alleged claim occurred in the District of Connecticut, and therefore, transfer is permitted pursuant to 28 U.S.C. § 1404(a).

Indeed, venue does not appear to be proper here in the Northern District of California. Contrary to Plaintiff's assertion, the fact that Defendant Transcept Pharma, Inc. ("Transcept") is headquartered in California does not make venue proper. Under Section 1391(b)(1), venue is proper in a "judicial district in which any defendant resides, if all defendants are residents of the [s]tate in which the district is located." 28 U.S.C. § 1391(b)(1). Here, codefendants reside in different states. As such, "residence" venue cannot be established. Instead, venue would be proper in a district where a substantial part of the events or omissions giving rise to the alleged claim occurred. *See* 28 U.S.C. § 1391(b)(2). Plaintiff does not even allege that a substantial part of the events giving rise to its claims occurred in the Northern District of California, nor could it. (Opp. at 6 ("the event that gave rise to this claim was Plaintiff's receipt of the Fax Ad on its office fax machine in Ohio").)

As Defendants' Motion and the two supporting declarations establish, Defendant Transcept is the only party to this litigation with "any significant connection to the Northern

District of California" but "Transcept has little to do with the underlying allegations involved in this case." (Motion at 9.) Rather, most of the events underlying Plaintiff's allegations took place *in Connecticut* or Ohio. (Weingarten Decl. ¶¶ 3-6.) Indeed, it appears that virtually none of the events relevant to Plaintiff's allegations occurred in California. (*See* Weingarten Decl. ¶ 7 ("Transcept exercises little to no control or monitoring over the marketing strategy for Intermezzo and does not control the use of marketing faxes.").) Plaintiff does not dispute any of the facts established in, or provide any evidence that contradicts, the declarations of Brianne Weingarten and Merrill Corry, which were filed with the Motion. In light of these facts, the Northern District of California does not appear to be a proper venue for this litigation, while the District of Connecticut is proper.

### B. Even Under Plaintiff's Articulation of the Convenience Factors, the Balance of Factors Weighs Heavily in Favor of Transfer.

In their Motion, Defendants demonstrated that transfer to the District of Connecticut is warranted under the well-established factors articulated in the seminal case, *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). (*See* Motion at 5-10.) Despite acknowledging that "the *Jones* decision has been heavily cited and relied on by subsequent courts," Plaintiff nevertheless relies on a "slightly modified and re-ordered" test articulated in the district court case, *Wellens v. Daiichi Sankyo Co.*, No. 13-cv-0581-CW, 2013 U.S. Dist. LEXIS 89831, at *3 (N.D. Cal. June 25, 2013).[1] (Opp. at 4 n.7.) While the Ninth Circuit's *Jones* test provides the governing standard, the *Wellens* court factors that Plaintiff cites are similar, and even if the *Wellens* factors controlled, those factors likewise compel transfer.

#### 1. All of the Convenience Factors that Plaintiff Identifies Demonstrate that this Case Should Be Transferred to the District of Connecticut.

Plaintiff is correct that the convenience of the parties and witnesses, the location of evidence, and the location of the alleged tortious conduct are important factors for the Court to

---

[1] The Court in *Wellens* did not purport to create a new factors test. Instead, it merely listed several potentially relevant factors that the court "may consider" and in so doing cited to the Ninth Circuit *Jones* decision. *See Wellens*, 2013 U.S. Dist. LEXIS 89831, at *3.

consider. (Opp. at 5-10.) All of those factors *favor transfer* to the District of Connecticut. Plaintiff focuses its entire analysis exclusively on one Defendant—Transcept, which is located in California. (Opp. at 7-10.) Plaintiff completely ignores the Purdue Defendants and Logistic Innovations, LLC ("Logistic"). As explained in Defendants' Motion and the supporting declarations, "none of the events pertinent to Plaintiff's allegations occurred in California." (Motion at 8.) Furthermore, "because Purdue's headquarters and principal place of business are located in Connecticut, the individuals that Purdue expects to testify regarding the relevant allegations of this case all work in the District of Connecticut," and "[m]uch of the evidence likely to be relevant in this case—documents reflecting Purdue's marketing operations, as well as its primary computer servers—is located at Purdue's headquarters in Stamford, Connecticut." (*Id.* at 9.)

Plaintiff does not dispute these facts, but instead attempts to recast this case as being entirely focused on Defendant Transcept. Plaintiff's speculative hope, however, is inconsistent with its own complaint and contradicted by the evidence. While Transcept developed the drug that was the underlying subject matter of the faxes at issue (Cal. Comp. Ex. A.), "Transcept exercises little to no control or monitoring over the marketing strategy" for that drug and "does not control the use of marketing faxes." (Weingarten Decl. ¶ 7.) Accordingly, there will be virtually no documents and few, if any, witnesses from Transcept relevant to this litigation. Plaintiff appears to completely ignore these facts—inaccurately claiming that "Defendants offered no evidence or argument on this issue." (Opp. at 10.) Plaintiff speculates that Transcept "employees caused the Fax Ad to be sent to Plaintiff, and those with knowledge of Defendants' advertising activities in general are likely located in this district." (*Id.* at 9.) Plaintiff offers no evidence to support its erroneous assertions. The two faxes attached to Plaintiff's own complaint were both sent by "Logistic Innovations, LLC" from an Ohio fax number (area code 513), not by Transcept. (Cal. Comp. Ex. A.) As explained in the Weingarten Declaration, moreover, "[b]ecause Physicians Healthsource, Inc. is located in Ohio, any sales representatives contacting it with respect to Purdue marketing would also be located in or near Ohio, not California." (Weingarten Decl. ¶ 6.)

With respect to Logistic, the Corry Declaration explained that "the Logistic employees who Logistic expects would be most likely to testify regarding the subject matter of this litigation all work in New York" and "[m]ost of the Logistic records or documents that might be relevant to this litigation are stored or maintained in New York or Texas where Logistic's primary computer servers are located." (Corry Decl. ¶¶ 4-5.) Yet, Plaintiff does not respond to these facts, and completely ignores Logistic in its Opposition brief.

In sum, the alleged conduct took place primarily in Connecticut or Ohio, and virtually all of the documents and witnesses relevant to this litigation are located on the East Coast. By contrast, Transcept's involvement in the core allegations is tangential, and there will be few, if any, Transcept witnesses who have information relevant to the core allegations. (Weingarten Decl. ¶ 7.) All of these convenience factors, therefore, strongly favor transfer.

### 2. Plaintiff Admits that Its Choice of Forum Is Entitled to Less Deference.

Defendants explained in their motion that because "the Plaintiff does not reside in this district, and the district lacks any significant contacts with the operative facts of the complaint, Plaintiff's forum choice 'is entitled to only minimal consideration.'" (Motion at 7 (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).) Plaintiff responds by speculating that its "claim does have a material connection to the Northern District of California as the subject advertisement – along with the advertising campaign it was a part of – was likely planned and sent by employees working at Transcept's headquarters in Point Richmond, California." (Opp. at 7.) As explained above and in Defendants' Motion, however, Plaintiff's assertions are wrong.

Furthermore, Plaintiff admits "that there are reasons to give less deference to its choice of this forum" including "Plaintiff's location outside this forum, its acting in a representative capacity, and the possibility that members of the class it seeks to represent are located across the country." (Opp. at 7.) For all of these reasons, the Court should give Plaintiff's selection of this district only minimal consideration.

### 3. Plaintiff's Two Additional *Wellens* Court Factors Also Favor Transfer.

Plaintiff lists two additional factors that the district court in *Wellens* considered as relevant in determining whether to transfer: "feasibility of consolidation with other claims" and "the relative court congestion and time to trial in each forum." (Opp. at 4 n.7.) With respect to the first factor of consolidation with other claims, Plaintiff completely ignores Defendants' Motion and its own complaint, which specifically relies upon the filing of the previous Connecticut Action. (*See* Cal. Comp. ¶¶ 13, 16, 23, 26.) Indeed, this case should be consolidated with the pending earlier-filed case, *Physicians Healthsource, Inc. v. Purdue Pharma, L.P., et al*, No. 12-cv-1208-SRU, in the District of Connecticut before Judge Underhill. (*See* Motion at 2-3, 10-11.)

As to the second factor of court congestion, Plaintiff does not argue that this factor cuts in its favor (Opp. at 12-13), and, in fact, it does not. According to the National Judicial Caseload Profiles, in 2013, judges in the Northern District of California had, on average, over 600 "weighted filings," while judges in the District of Connecticut had, on average, around 300.[2] *See* Federal Court Management Statistics, *available at* http://www.uscourts.gov/Statistics/ FederalCourtManagementStatistics/district-courts-september-2013.aspx (last accessed on March 12, 2014). Similarly, in 2013, judges in the Northern District of California had, on average, around 450 civil filings, while judges in the District of Connecticut had, on average, around 250. (*Id.*) This factor thus weighs in favor of transfer.

### 4. Any Theoretical California State Law Claim is Irrelevant.

Plaintiff claims that California has a greater interest in this case than Connecticut because "California state law imposes additional penalties for junk fax advertisements sent from within the state." (Opp. at 9; *see also* Opp. at 12.) Fundamentally, the fax attached to Plaintiff's own Complaint demonstrates that it was ***not*** sent from within California―it was sent from a New York entity using an Ohio phone number. (*See* Cal. Comp. Ex. A.) Moreover, this

---

[2] The "weighted filings" statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions.

argument is irrelevant because Plaintiff has not alleged any California state law claims.[3] The existence of unpled, theoretical California state law damages is irrelevant to this Court's analysis.

Plaintiff also relies on these unpled California state law claims to argue that "[t]his Court is likely much more familiar with California law than a federal court judge in Connecticut." (Opp. at 11 ("this case also presents a state law component as California has enacted its own prohibition of facsimile advertisements that is likely applicable to this case as well").) This issue is irrelevant; no California claim is alleged here. Furthermore, Plaintiff does not dispute any of Defendants' arguments that Judge Underhill in the District of Connecticut is "already very familiar with the facts involved and the specific statutory law governing this instant case." (Motion at 7.) Judge Underhill's familiarity with the governing law and relevant facts favors transfer.

### III. PLAINTIFF COMPLETELY IGNORES THE INTEREST OF JUSTICE COMPONENT OF SECTION 1404.

Independent from convenience factor considerations, Defendants demonstrated in their motion that the interests of justice separately warrant transfer. (Motion at 10-12.) Plaintiff does not dispute any of these reasons for transfer. For example, Defendants showed that judicial economy favors transfer because Plaintiff's "'willfulness' allegations are predicated on a finding of liability in the Connecticut Action" and "[t]he same judge evaluating the claims in the Connecticut Action should evaluate the claims asserted here. . . ." (Motion at 11.) Yet, Plaintiff does not respond to this issue and completely ignores its own allegations that Purdue "willfully" violated the TCPA in light of the earlier-filed Connecticut Action.[4] (Cal. Comp. ¶ 23.) Given

---

[3] Plaintiff cannot use its opposition brief to amend its complaint. *See, e.g.*, *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (same).

[4] While alleging that the Purdue Defendants "willfully" violated the TCPA because of the Connecticut Action, Plaintiff's Opposition simultaneously attempts to paint the two actions, and the underlying faxes, as substantially different. (*See* Opp. at 2-3 ("The differences between the two cases are substantial.").) Yet, Plaintiff does not dispute that in the Connecticut Action "Plaintiff filed an amended complaint that proposes a putative class that overlaps with the class

(Footnote continues on next page.)

that Plaintiff's allegations depend on a finding of liability in the Connecticut Action, the cases should be considered together. For the reasons explained in Defendants' Motion, the interests of justice provide an independent basis for transferring this case to the District of Connecticut.

## IV. CONCLUSION

For all of these reasons, Defendants respectfully request that this Court transfer this matter to the District of Connecticut.

Dated: March 20, 2014

TIFFANY CHEUNG
BEN PATTERSON
MORRISON & FOERSTER LLP

By: /s/ Tiffany Cheung
TIFFANY CHEUNG
TCheung@mofo.com

Counsel for Defendants
Purdue Pharma L.P., Purdue Pharma Inc.,
Purdue Products L.P., Transcept Pharma, Inc.

Dated: March 20, 2014

STEPHEN H. TURNER
PATRIK JOHANSSON
CHRISTOPER M. HABASHY
LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Stephen H. Turner
STEPHEN H. TURNER
turner@lbbslaw.com

Counsel for Defendant
Logistic Innovations, LLC

---

(Footnote continued from previous page.)

asserted here." (Motion at 2.) Any claimed differences between the alleged faxes sent to these overlapping putative classes is irrelevant to the transfer analysis given that this case purports to cover all such faxes.

# ATTESTATION

I, Tiffany Cheung, am the ECF User whose ID and password are being used to file this Reply In Support Of Motion to Transfer. In compliance with Local Rule 5-1(i)(3), I hereby attest that Stephen H. Turner has concurred in this filing.

Dated: March 20, 2014          /s/ Tiffany Cheung
                                TIFFANY CHEUNG